NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 30

No. 2021-031

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Addison Unit, |
| | Criminal Division |
| | |
| Austin R. Burnett | January Term, 2022 |

Thomas Carlson, J.

Kim McManus, Addison County Deputy State's Attorney, Middlebury, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Seibert, Appellate Defender, Montpelier, for
  Defendant-Appellant.


PRESENT: Reiber, C.J., Eaton, Carroll and Cohen, JJ., and Manley, Supr. J. (Ret.),
          Specially Assigned


¶ 1.    **COHEN, J.**    Defendant appeals the criminal division's order revoking his probation. We affirm the court's determination that defendant violated probation conditions prohibiting him from possessing or using a device with access to the internet or having a social-media account and from possessing or using pornography. However, we reverse the court's determination that defendant violated a condition governing where he could reside and remand for the court to reconsider its disposition without that violation.

I.  Factual Background

¶ 2.    In 2016, as part of a global agreement resolving charges in three separate dockets, defendant pled guilty to one count of sexual assault on a child under sixteen years old, one count of sexual assault of an adult without consent, and one count of disseminating indecent material to

a minor. Defendant agreed to a set of probation conditions that included the following special sex-offender conditions:

> You may not purchase, possess, or use pornography or erotica.
>
> . . .
>
> You may not own, possess, use, or have access to a videographic or photographic device, to include but not be limited to cameras or cellular telephones with photographic or videographic capabilities, without prior permission of your Probation Officer or therapist.
>
> . . .
>
> You may not own, possess, or have access to a computer or other devices [] that have access to the internet, unless approved, in advance, by your Probation Officer or therapist. You may not have or maintain a social media account, such as Facebook, Instagram, Kik, Snapchat, etc. of any kind unless approved, in advance, by your Probation Officer or designee in writing.

Consistent with the plea agreement, defendant received concurrent sentences of four to six years, all suspended except for thirty-eight months, on the first count; five years, deferred, on the second count; and three to six months on the third count. The Department of Corrections determined defendant to be a high-risk sex offender, and he began participating in the Vermont Treatment Program for Sexual Abusers (VTPSA) while he was incarcerated.

¶ 3. In July 2017, defendant admitted to violating the VTPSA rules by writing letters to an intern working with the VTPSA, and the parties agreed to extend the unsuspended portion of defendant's sentence by three months to allow him to complete the program.

¶ 4. In December 2017, defendant received a major disciplinary report for attempting to pick the lock of his cell door. He was removed from the VTPSA and a violation-of-probation (VOP) charge was filed. The trial court found that defendant had violated a condition requiring him to fully participate in the VTPSA during the course of his unsuspended sentence. Defendant appealed, and we reversed in a decision issued on March 20, 2020. State v. Burnett, 2020 VT 28, ¶ 23, 212 Vt. 80, 231 A.3d 163. Because he had served the unsuspended portion of his sentence,

2

defendant was released from prison on probation on March 25, 2020. He did not complete sex-offender treatment programming prior to his release.

¶ 5. The day after his release, defendant met with his probation officer and reviewed and signed his probation order, including the special sex-offender conditions listed above. The probation officer subsequently gave defendant permission to access the internet to apply for jobs using defendant's girlfriend's device. Later in June, the probation officer permitted defendant to have an antiquated flip phone that had a camera and internet capabilities under the condition that defendant refrain from using those functions. At no point did the probation officer permit defendant to have a smartphone or to access the internet for purposes other than searching for work.

¶ 6. Within days after defendant's release from prison, defendant called the probation officer, distraught, stating that his mother wanted him to leave her home and that he was going to turn himself back in to jail. The probation officer spoke to defendant's mother, who reported that defendant had used a smartphone to send a nude photograph of himself to his sister-in-law. The sister-in-law showed defendant's mother the picture, and defendant's mother ordered defendant to leave her home. Defendant admitted to the officer that he had used the internet and had sent a picture of his genitals to three adult women. As a result of this incident, the probation officer filed a VOP complaint in April 2020 alleging that defendant had violated the conditions prohibiting him from possessing or using a phone with a camera or an internet-capable device and the condition prohibiting him from possessing pornography. The probation officer reminded defendant that he was prohibited from accessing the internet.

¶ 7. A few months later, defendant's mother called the probation officer because she was attempting to contact defendant and he had blocked her number, suggesting that he was using a cellular phone. At that point the probation officer had not yet approved a cellular phone for defendant. Defendant eventually admitted to the probation officer that he had been using a

smartphone that was connected to the internet. This caused the probation officer to file an amended VOP complaint in June 2020, which alleged that defendant had continued to use a cellular phone to access the internet without approval after the April complaint was filed.

¶ 8. A few months later, the probation officer was contacted by defendant's ex-girlfriend, who was concerned that defendant had a Facebook account and might be trying to contact her minor daughter. The probation officer searched for defendant's account and found that it contained pictures of defendant that appeared to have been posted after he was released from prison. Defendant allowed the probation officer to search his apartment, and the probation officer observed that defendant had two smartphones, two laptops, and a PlayStation gaming console. Defendant told the probation officer that he had found these items at the transfer station. He refused to allow the probation officer to search the devices. However, he admitted to the probation officer that he had a Facebook account and a smartphone, and that he had been using the PlayStation to play games on the internet. As a result, the probation officer filed a third VOP complaint alleging that defendant had violated his conditions by using the internet and social media.

¶ 9. Defendant moved to dismiss the VOP charges on the grounds that the court did not hold a timely merits hearing, the complaint failed to allege that he had not made progress in rehabilitation, and the internet-access restriction was not reasonably related to his offenses. The court denied the motion. Defendant then filed a motion requesting home detention and another motion to dismiss arguing that the court lacked jurisdiction over him. The court denied both motions at the merits hearing.

¶ 10. Defendant admitted at the merits hearing that he did not have permission from the probation officer to have a smartphone but had possessed one before and after obtaining his flip phone. He also conceded that he had a PlayStation that he used to play games on the internet. He denied that he had an active Facebook account.

¶ 11. In a written decision entered after the hearing, the court determined that defendant had violated the probation conditions prohibiting him from possessing or using pornography, possessing or accessing a camera or smartphone, and possessing or using devices with access to the internet or having a social-media account, as well as a fourth condition prohibiting him from residing where he would have access to computers or other devices with access to the internet. It subsequently sentenced defendant to serve three years to life with credit for time served. This appeal followed.

## II. Analysis

¶ 12. "A court may revoke probation only after the State has established an alleged violation by a preponderance of the evidence." State v. Millard, 149 Vt. 384, 385, 543 A.2d 700, 701 (1988); 28 V.S.A. § 302(a)(4). The State must demonstrate "that there has been a violation of the express conditions of probation, or of a condition so clearly implied that a probationer, in fairness, can be said to have notice of it." State v. Austin, 165 Vt. 389, 398, 685 A.2d 1076, 1082 (1996) (quotation and emphases omitted). If this burden is satisfied, the burden then shifts to the defendant to show "that his failure to comply was not willful but rather resulted from factors beyond his control and through no fault of his own." Id. (quotation omitted).

¶ 13. In determining whether a probationer has violated his conditions, the trial court "must first make a factual determination of the probationer's actions, and then make an implicit legal conclusion that the probationer's actions violated his probationary terms." State v. Woolbert, 2007 VT 26, ¶ 8, 181 Vt. 619, 926 A.2d 626 (mem.). We will affirm the trial court's factual findings if supported by the evidence and will uphold its legal conclusions if they are "reasonably supported by the findings and do[] not constitute an erroneous interpretation of the law." State v. Bostwick, 2014 VT 97, ¶ 11, 197 Vt. 345, 103 A.3d 476.

¶ 14. On appeal, defendant argues that his probation conditions did not ban him from using the internet, that the probation officer misinterpreted the internet-access condition, and that

5

the plain language of that condition did not give fair notice that defendant was prohibited from using the internet. He argues that the Court must narrowly interpret the internet-access and social-media conditions to avoid burdening his right to freedom of speech and that there was no reasonable nexus between the offenses and those conditions. He claims that there was insufficient evidence to support a violation of the condition prohibiting possession of pornography because the only pornography alleged was a nude photo of himself and that photo was not introduced into evidence. Finally, he argues that the court improperly found a violation of the condition prohibiting him from residing where he had access to devices with internet access or cameras, because no such violation was alleged by the State.[1] As discussed below, we affirm the court's determination that defendant violated the internet-access and pornography conditions. However, we reverse the court's finding that defendant violated the residency condition and remand for reconsideration of disposition without that violation.

### A. Internet-Access Condition

¶ 15. Defendant first claims that the State failed to prove that he was subject to a probation condition prohibiting internet use. This argument is without merit. To prevail in a probation-revocation proceeding, "[t]he State must present evidence to prove . . . the terms and conditions of [defendant's] probation." Millard, 149 Vt. at 385, 543 A.2d at 701. Here, the State established that defendant was subject to a condition that prohibited any internet access without prior approval. That provision states in its entirety:

> You may not own, possess, or have access to a computer or other devices [] that have access to the internet, unless approved, in advance, by your Probation Officer or therapist. You may not have or maintain a social media account, such as Facebook, Instagram, Kik, Snapchat, etc. of any kind unless approved, in advance, by your Probation Officer or designee in writing. Such approval shall be based upon your progress in the aforementioned sex offender counseling, as well as how well you are progressing in your rehabilitation, to be determined by your Probation Officer or

---

[1] Defendant does not challenge the trial court's determination that he violated the condition prohibiting him from possessing a device with photographic or videographic capabilities.

therapist. Lack of approval must be based upon reasonably objective criteri[a] relating to your lack of progress in sex offender counseling and/or lack of progress in your overall rehabilitation such that access to such contraband would risk violation of your conditions of probation. Your Probation Officer or therapist should approve use of this technology when therapeutically supported based upon progress in your sex offender counseling, either within or without a correctional facility. You will allow your Probation Officer or designee to monitor your computer and internet usage, to include through the use of specific software for monitoring sex offenders, for the sole purpose of determining whether you have engaged in activities that would constitute a violation of these conditions of probation. You will pay for any expenses associated with this. You may use computers within the correctional facility when you are serving any portion of your sentences.

The above condition expressly prohibited defendant from accessing the internet unless he received prior approval from his probation officer or therapist. It likewise prohibited him from having or maintaining a social-media account of any kind without prior approval. The plain language of the condition made it clear that defendant was not to access the internet at all without first obtaining his probation officer's permission. We therefore reject defendant's claim that the condition did not prohibit him from using the internet.

¶ 16. Defendant next argues that, even if a complete prohibition on internet use was contemplated, the condition required such a ban to be preceded by a finding that he had not made adequate progress in counseling or rehabilitation. He argues that the probation officer impermissibly modified the condition by imposing an internet ban from the outset of his probation without first considering his compliance with treatment and conditions.

¶ 17. Probation officers have some discretion in implementing conditions, but the power to impose or modify the language of the conditions "rests exclusively with the courts." State v. Rivers, 2005 VT 65, ¶ 15, 178 Vt. 180, 878 A.2d 1070; see 28 V.S.A. §§ 252(a), 253(a). Thus, we have reversed VOP convictions that were premised on violations of probation-officer-imposed requirements where those requirements were not implied or justified by the language of the underlying probation conditions. For example, in State v. Galloway, the defendant was found to

7

have violated a condition requiring him to "successfully enroll, participate in, and complete a program for sex offenders approved by [the Department of Corrections]" by failing to complete the VTPSA while he was serving the incarcerative portion of his sentence. 2020 VT 29, ¶ 17, 212 Vt. 91, 231 A.3d 1157. This Court reversed the conviction, concluding that the Department's interpretation of the condition constituted an impermissible modification because it added a requirement not expressly or impliedly present in the condition, namely, requiring defendant to complete the program offered in prison, as opposed to a community-based program. Id. ¶ 18.

¶ 18. Similarly, in Rivers, the defendant was convicted of violating a condition prohibiting him from having contact with children under the age of sixteen by attending a fair. 2005 VT 65, ¶ 16. We reversed, concluding that the probation officer had interpreted the condition to prohibit the defendant from going to places where children could be expected to congregate, but that this interpretation was not expressed in or implied by the condition's plain language. Id. We held that "[b]y prohibiting defendant from attending the fair, defendant's probation officer converted the probation condition from a contact-based condition to a location-based condition. In so doing, the probation officer crossed the line between condition interpretation and modification." Id. ¶ 19.

¶ 19. Defendant's attempt to analogize this case to Galloway and Rivers fails because his probation officer did not impose an interpretation of the internet-access condition that was inconsistent with its plain language. The condition clearly contemplates that defendant was to begin probation without any internet access, a restriction that could be loosened over time if he demonstrated progress in sex-offender counseling and rehabilitation. The condition did not require the probation officer to first make a finding that defendant was failing to progress in treatment before prohibiting him from using the internet. It did not state, for example, that defendant was to have access to the internet unless his probation officer forbade it due to lack of progress. Rather, the "lack of approval" language, viewed in context, provided guidelines for the probation officer

to exercise his discretion when and if defendant demonstrated the necessary progress.[2] The probation officer applied the language as written and did not impose any impermissible modifications.

¶ 20.    For the same reason, we reject defendant's claim that the condition failed to put him on notice that he was not permitted to use the internet. "A probationer has fair notice of those conditions expressly stated in the probation certificate." State v. Stern, 2018 VT 36, ¶ 7, 207 Vt. 479, 186 A.3d 1099; see 28 V.S.A. § 252(c) (requiring probationer be given certificate explicitly setting forth probation conditions). "Fair notice can also be provided by the instructions and directions given to defendant by his or her probation officer." State v. Peck, 149 Vt. 617, 619-20, 547 A.2d 1329, 1331 (1988). As discussed above, the condition plainly stated that defendant could not use any device to access the internet without prior approval from his probation officer. Even if defendant did not understand the internet-access condition when he signed it upon his release from prison in March 2020, the probation officer explained it to him after his first violation in April 2020. We therefore conclude that defendant had fair notice that he was prohibited from accessing the internet.

¶ 21.    Defendant further contends that the internet-access condition is unconstitutionally overbroad and vague, lacks a reasonable nexus to his offenses, and violates his First Amendment right to freedom of speech. Defendant argues that in Packingham v. North Carolina, the U.S. Supreme Court held that a North Carolina law prohibiting registered sex offenders from accessing social-media websites violated the First Amendment rights of offenders because it was not narrowly tailored to serve a significant government interest in protecting children from abuse. 582 U.S. __, 137 S. Ct. 1730, 1738 (2017). Defendant also points to decisions from other jurisdictions striking down conditions prohibiting any computer or internet use for convicted sex offenders as unconstitutionally overbroad. See, e.g., United States v. Holena, 906 F.3d 288, 290 (3d Cir. 2018)

---

[2] No evidence of defendant's progress in treatment was presented below.

(reversing imposition of condition of supervised release that prohibited sex offender from using computers or internet); People v. Morger, 2019 IL 123643, ¶ 58, 160 N.E.3d 53, 69 (holding that Illinois statutory probation condition banning sex offenders from using social-media websites was unconstitutionally overbroad).

¶ 22.    These decisions might be relevant if defendant were appealing directly from the imposition of the internet-access condition.  However, it is well-settled law in Vermont that "a probationer is barred from raising a collateral challenge to a probation condition that he was charged with violating, where the challenge could have been raised on direct appeal from the sentencing order."  Austin, 165 Vt. at 401, 685 A.2d at 1084.  This rule applies to constitutional challenges that were apparent at the time of sentencing.  See id. at 401 n.3, 685 A.2d at 1084 n.3. The record shows that the conditions in this case were carefully negotiated between defense counsel and the State and were agreed to by defendant.  The internet-access condition clearly contemplated that defendant would not be allowed to use the internet or have a social-media account without first obtaining approval from his probation officer.  He had the opportunity to appeal the condition or to move for sentence reconsideration, but he did not do so.  Nor did he move to modify the condition at any point.  Accordingly, he is barred from arguing now that the conditions are facially invalid.

¶ 23.    Defendant asserts that the Austin rule does not apply because he is challenging the application of the internet-access condition rather than the condition itself.  See id. (noting that this Court "ha[s] allowed constitutional challenges to be made during revocation proceedings when the alleged constitutional infirmity became apparent only as applied to the facts of the alleged violation").  He argues that the condition as applied by the probation officer impermissibly infringes on his right to freedom of speech.  Defendant failed to preserve this argument for our review by raising it before the trial court.  See State v. Hinchliffe, 2009 VT 111, ¶ 31, 186 Vt. 487, 987 A.2d 988 ("Even when the defendant asserts a violation of constitutional rights, failure to

10

promptly raise the issue before the trial court results in a waiver." (quotation omitted)). Moreover, defendant's argument depends on a flawed premise: namely, that the prohibition on internet or social-media use arose from the probation officer's interpretation of the condition and was not apparent at the time of sentencing. The meaning of the condition was clear at the time of its imposition, and defendant cannot circumvent the Austin rule by claiming that he is merely challenging how it was applied to him. See State v. Amidon, 2010 VT 46A, ¶ 10, 188 Vt. 617, 8 A.3d 1050 (mem.) (declining to address claims on appeal from VOP finding that probation condition violated First Amendment right of association and lacked nexus to underlying crime because "given defendant's agreement to these conditions as part of his original plea bargain, these challenges should have been raised on direct appeal from his sentencing order").

¶ 24. The evidence presented at the VOP hearing was sufficient to support the trial court's determination that defendant violated the internet-access condition. Defendant admitted at the hearing and to his probation officer that he had used a smartphone and a gaming console to access the internet. Defendant's mother testified that defendant had used the internet to send nude pictures of himself to others. His probation officer observed that defendant possessed smartphones, computers, and the gaming console in his home. The officer testified that defendant did not have approval to use these devices, and defendant admitted that he had possessed a smartphone and a PlayStation without receiving prior approval. There was also sufficient evidence to support a finding that defendant had a social-media account, specifically, his admission to the probation officer and the Facebook posts presented by the State. Although defendant suggested that his ex-girlfriend had used his password to create the posts, the trial court was within its discretion to find his testimony not credible in light of the other evidence. See Austin, 165 Vt. at 398, 685 A.2d at 1082 ("Findings of fact fairly and reasonably supported by any credible evidence must stand."). We therefore decline to disturb the court's conclusion that defendant violated the internet-access condition.

¶ 25. Defendant next argues that the State failed to meet its burden of demonstrating that he violated the condition prohibiting him from possessing or using pornography because the State did not proffer the picture itself and because a nude self-portrait cannot be considered pornography.[3] We hold that there was sufficient evidence to support the court's determination that defendant violated this condition.

¶ 26. The condition at issue states that defendant "may not purchase, possess, or use pornography or erotica." The terms pornography and erotica are not defined, so we look to their common definitions. See State v. Galanes, 2015 VT 80, ¶ 13, 199 Vt. 456, 124 A.3d 800 ("When interpreting the language of a probation condition, we look first to the plain and ordinary meaning of the terms, frequently turning to dictionary definitions." (citation omitted)). Pornography means "the depiction of erotic behavior (as in pictures or writing) intended to cause sexual excitement." Pornography, https://www.merriam-webster.com/dictionary/pornography [https://perma.cc/H8UZ-QUR3]; see also Pornography, Black's Law Dictionary (11th ed. 2019) ("Material (such as writings, photographs, or movies) depicting sexual activity or erotic behavior in a way that is designed to arouse sexual excitement."). Similarly, erotica means "[m]aterials such as literature and artworks intended to arouse sexual desire." Erotica, Black's Law Dictionary (11th ed. 2019).

---

[3] We interpret defendant's argument as a challenge to the sufficiency of the evidence. To the extent that he is arguing that the State failed to comply with Vermont Rule of Evidence 1002 by failing to introduce the photograph to prove its contents, he did not object on this ground below and has therefore failed to preserve such a claim for our review. See State v. Decoteau, 2007 VT 94, ¶ 11, 182 Vt. 433, 940 A.2d 661 (explaining that party must make timely objection to preserve evidentiary objection in probation-revocation hearing). Likewise, to the extent that defendant is claiming that the condition violates his First Amendment rights, this claim fails for the same reasons as his challenge to the internet-access condition. See ante, ¶¶ 21-23. He did not appeal the imposition of the condition, seek sentence reconsideration, or move to modify the condition; he is therefore barred from raising a facial challenge to the condition now. Austin, 165 Vt. at 401, 685 A.2d at 1084. He also did not argue below that the condition was unconstitutional as applied and therefore has failed to preserve such a claim for our review. See Hinchliffe, 2009 VT 111, ¶ 31.

¶ 27. A nude picture of one's own body does not necessarily meet either of these definitions, because not all nudity is sexual or intended to arouse desire. See Erznoznik v. City of Jacksonville, 422 U.S. 205, 213 (1975) (stating that "[c]learly all nudity cannot be deemed obscene even as to minors," and listing as examples of non-obscene nudity "a picture of a baby's buttocks, the nude body of a war victim, or scenes from a culture in which nudity is indigenous"). However, we conclude there was sufficient evidence to support the trial court's determination that the photograph in this case was pornographic in nature. See Austin, 165 Vt. at 397, 685 A.2d at 1082 ("With respect to probation orders, findings fairly and reasonably supported by any credible evidence must stand." (quotation and alteration omitted)); see also State v. Godfrey, 2010 VT 29, ¶ 18, 187 Vt. 495, 996 A.2d 237 ("[T]he State is allowed to rely exclusively on circumstantial evidence in proving its case.").

¶ 28. The circumstances leading to the imposition of the pornography condition in this case provide important context to the court's finding. As discussed above, in 2016 defendant pleaded guilty to several sex offenses including disseminating indecent material to a minor. At the change-of-plea hearing, defendant admitted that he sent a photograph of his erect penis to a seventeen-year-old girl on Facebook. He admitted that he knew the photo was "sexual material," and he understood the "character of what [he was] sending." Subsequently, he agreed to a set of special sex-offender probation conditions that included the condition that prohibited him from purchasing, possessing, or using pornography or erotica.

¶ 29. Five years later, and approximately one week after his release from prison, defendant sent a naked picture of himself to his sister-in-law. She showed the photograph to defendant's mother, who immediately ordered defendant out of her house. Later that day, according to the affidavit attached to the VOP complaint, defendant left a voicemail for his probation officer saying that "he wanted to turn himself into the jail . . . [because] he knew his actions put him in violation of his probation."

13

¶ 30.     At the probation-revocation hearing, defendant's mother testified that the photograph she saw depicted defendant's "private area."  Defendant's probation officer testified that defendant's mother called him that day explaining that she had kicked defendant out of her house for "sending inappropriate photos to his sister-in-law . . . using wifi on a smartphone."  After that phone call with defendant's mother, which was conducted with defendant's permission, defendant told the probation officer that he had sent "inappropriate photos . . . [to] three age-appropriate females."  When asked to clarify what he meant by "inappropriate," the probation officer responded, "I believe it was a picture of his genitals."  Taken together and viewed in the context of defendant's previous behavior, the descriptions of the picture, defendant's statements to his probation officer after the picture was sent, and his mother's shocked reaction constituted sufficient evidence from which the court could reasonably infer that the photograph of defendant's nude genitals was likely pornographic, that is, intended to cause sexual excitement.  See State v. Danaher, 174 Vt. 591, 593, 819 A.2d 691, 694 (2002) (mem.) (explaining that in appeal from probation-revocation decision, "[t]his Court may presume that the lower court properly inferred essential facts from its factual findings"); State v. Gedutis, 163 Vt. 591, 592, 653 A.2d 761, 762 (1994) (mem.) (affirming probation-revocation decision based on complainant's testimony that defendant left her threatening telephone messages despite State's failure to introduce answering machine tape into evidence).

¶ 31.     Defendant argues that the no-pornography condition failed to put him on notice that possession or use of a depiction of his own nudity was prohibited.  Defendant did not raise this argument below, so we review it for plain error.  See State v. Kane, 2017 VT 36, ¶ 19, 204 Vt. 462, 169 A.3d 762 (explaining that fair-notice challenge must be raised at probation-revocation hearing to be preserved for review; otherwise, plain-error standard applies).  "Plain error exists only in extraordinary situations where the error is obvious and strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice."  State v. Lucas, 2015 VT 92, ¶ 9, 200

14

Vt. 239, 129 A.3d 646 (quotations and alteration omitted). We conclude that there was no error here. Defendant's own statements to the probation officer after sending the photo indicated that he was aware that he had violated the condition. Furthermore, as noted above, one of the underlying convictions that led to the imposition of the condition was based on defendant's act of sending a minor a nude photo of his genitals, which he admitted was sexual material. Under these circumstances, the prohibition against such behavior was clearly implied and defendant "in fairness, can be said to have notice of it." Austin, 165 Vt. at 398, 685 A.2d at 1082 (quotation omitted).

## C. Residential Condition

¶ 32. Finally, defendant argues that the court erred in finding that he violated a condition prohibiting him from residing where he had access to computers or other devices with access to the internet because he was never charged with violating this condition. The State concedes that this was error but argues that it was harmless because the court would have revoked defendant's probation based on his other violations. We disagree that the error was harmless because the violation adjudication may have affected the court's decision regarding sentencing. "We cannot know what sentence the court might have imposed if it had found fewer probation violations." State v. Blaise, 2012 VT 2, ¶ 27, 191 Vt. 565, 38 A.3d 1167 (mem.). We therefore conclude that it is necessary to remand the case for resentencing. See id.

The decision below is affirmed except for the trial court's finding that defendant violated the residency condition. That finding is reversed and the matter is remanded for the court to reconsider its disposition in light of this opinion.

FOR THE COURT:

_____

Associate Justice

15